UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs                                                              Case No: 10-20078
                                                               Honorable Victoria A. Roberts

AMOS MOORE,

    Defendant.

_____/

## ORDER

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

This matter is before the Court on Defendant Amos Moore's "Motion to Suppress." (Doc. #12). Moore asks the Court to suppress the 287 pounds of marijuana seized from his semi-tractor and trailer, as well as the incriminating statement he made after the seizure.

On May 11, 2010, the Court referred this motion to Magistrate Judge Virginia A. Morgan for a Report and Recommendation ("R&R"). The Magistrate Judge held an evidentiary hearing on June 8, 2010. On July 14, 2010, the Magistrate Judge filed an R&R, recommending that the Court GRANT Moore's motion to suppress.

The Government filed objections on July 23, 2010. Moore did not respond.

For the reasons stated, the Magistrate Judge's R&R is **ADOPTED**, and Moore's motion is **GRANTED**.

1

## II. BACKGROUND

### A. Traffic Stop

#### 1. Defective Equipment

On November 22, 2009, Moore's semi-tractor and trailer were stopped by the Dearborn Police Department for "defective equipment." *See* Report of Investigation from the Drug Enforcement Administration ("DEA"), ¶5; and, the Prosecution Report from the Dearborn Police Department, p.1. Neither report specifies what "defective equipment" means.

Special Agent Bryan Satori of the DEA told the Government that "defective equipment" means that the lights on the front of Moore's semi-tractor – with the exception of the turn signal – were not working, in violation of Michigan law. SA Satori testified that he received that information from Corporal Madou Bazzi, who is an officer for the Dearborn Police Department, and a member of the DEA Task Force.

This definition of "defective equipment" was confirmed by the Government in response to defense counsel's discovery request. *See* letter dated April 19, 2010 from the Assistant United States Attorney:

> As mentioned in my message to you this morning, all of the exterior lights (with the exception of turn signals) must be illuminated. This violation served as the basis for a traffic stop for defective equipment.

At the evidentiary hearing, Officer Brenton King of the Dearborn Police Department testified that he stopped Moore's semi-tractor and trailer because Corporal Bazzi told him the left turn signal on the semi-tractor was not illuminated, in violation of Michigan law. Before the traffic stop, Officer King could not confirm whether the turn

2

signal was illuminated; he was behind Moore's semi-tractor and trailer.

When the Government asked Corporal Bazzi at the evidentiary hearing why Moore's semi-tractor and trailer were stopped, he started to tell the Magistrate Judge that some of the lights on the front of Moore's semi-tractor were not illuminated, not that the left turn signal was not illuminated. Corporal Bazzi ultimately testified that the left turn signal was not illuminated.

Officer Bruce Caldwell of the Dearborn Police Department took photographs of Moore's semi-tractor after the traffic stop. He testified at the evidentiary hearing that it appeared that the left turn signal was not illuminated.

In sum, Corporal Bazzi is the only officer who allegedly saw "defective equipment" on Moore's semi-tractor before the traffic stop was initiated.

Moore admits that the lights on the left side of his semi-tractor below the turn signal were not illuminated, but the law does not require those lights to be illuminated. Moore says his left turn signal was illuminated at the time of the traffic stop.

### 2. Search of Moore's Semi-Tractor and Trailer

Following the traffic stop, Corporal Bazzi obtained Moore's consent to search the semi-tractor and trailer.

Corporal Bazzi found six large duffle bags that contained numerous bails of marijuana.

Subsequently, Moore gave an incriminating statement to the DEA.

### B. Magistrate Judge's Findings

Moore seeks to suppress the marijuana that was seized on November 22, 2009,

3

as well as the statement he made after the seizure.  He says: (1) the traffic stop was improper because the lights on his semi-tractor that were not illuminated were not to be illuminated; (2) an officer's mistake of law does not provide the probable cause required for the traffic stop; and (3) the statement he made after the search must be suppressed, as "fruit" of the illegal traffic stop.

The Magistrate Judge says the marijuana and the statement should be suppressed because:  (1) the turn signal on Moore's semi-tractor was illuminated; (2) the non-working lights were not required by law; (3) it appears that the DEA may have been told by the Dearborn Police that all the required lights were working; (4) the evidence in the record contradicts Officer Bazzi's testimony that the turn signal was not illuminated; (5) the Government's photographs of Moore's semi-tractor demonstrate that the turn signal was illuminated; (6) the Government waived its argument that the Dearborn Police had reasonable suspicion to support an investigatory detention; and (7) assuming the investigatory detention argument is not waived, it should be rejected because the traffic stop was made solely on the basis of an alleged civil traffic infraction.

### C. The Government's Objections

The Government objects to the Magistrate Judge's findings.  It says:  (1) the police had probable cause to effectuate a traffic stop based on the fact that Moore's left turn signal was not illuminated; (2) the relevant inquiry is whether the police had probable cause to believe that a traffic violation occurred, not whether a traffic violation in fact occurred; and (3) the stop of Moore's semi-tractor and trailer was justified as an investigatory detention.

## III. APPLICABLE LAW AND ANALYSIS

### A. Traffic Stop Based on an Investigatory Detention

The testimony at the evidentiary hearing, the DEA report, and the Dearborn Police Report, all support the conclusion that the traffic stop was based solely on an alleged civil traffic infraction. There is no evidence in the record that Moore's semi-tractor and trailer were stopped for an investigatory detention.

The Court rejects the Government's argument that the stop of the semi-tractor and trailer was justified as an investigatory detention.

The only remaining question is whether the traffic stop was justified based on defective equipment.

### B. Traffic Stop Based on Defective Equipment

"[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth Amendment]." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

The decision to conduct a traffic stop is reasonable and complies with the Fourth Amendment guarantee against "unreasonable" searches and seizures, if the officer had probable cause to believe Moore committed a traffic infraction. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (citing *Prouse*, 440 U.S. at 659 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*)). Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Corporal Bazzi is the officer who believed he had probable cause to direct a

5

traffic stop. However, Corporal Bazzi has credibility issues. Corporal Bazzi's initial reason for directing the traffic stop was that Moore's front lights on his semi-tractor were defective, but the fact that Moore's front lights were not illuminated is not a violation of Michigan law.

Corporal Bazzi then changed his reason for directing the traffic stop; he said Moore's left turn signal was not illuminated.

The Court reviewed the photographs provided by the Government, and finds there is an amber-colored reflection on the chrome pole in front of the left turn signal, and on the frame of the semi-tractor below the left turn signal. This is evidence that the left turn signal was illuminated when Moore was stopped for "defective equipment."

Assuming Corporal Bazzi believed the left turn signal was not illuminated at the time of the traffic stop, probable cause to direct the traffic stop only existed, if Corporal Bazzi had a *reasonable* belief that the turn signal was not illuminated. *See United States v. Gross*, 550 F.3d 578, 584 (6th Cir. 2008) (citing *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005)).

It was not objectively reasonable for Corporal Bazzi to believe that the left turn signal on Moore's semi-tractor was not illuminated. While Officer King testified that it was "a little foggy" on the night of the traffic stop, Corporal Bazzi had sufficient opportunity to determine whether the turn signal was illuminated. He had Moore's semi-tractor and trailer under surveillance for a couple of hours, and Officer King testified that Moore was driving slow.

The Court finds the stop of Moore's semi-tractor and trailer was unlawful at its inception.

**IV.    CONCLUSION**

The Court **ADOPTS** the Magistrate Judge's R&R.  Moore's motion is **GRANTED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 24, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 24, 2010.

s/Linda Vertriest
Deputy Clerk

---